INVESTORS TITLE INSURANCE COMPANY, PLAINTIFF v. DAVID F. HERZIG, JERRY S. CHESSON, SOUTHEASTERN SHELTER CORPORATION, LEE L. CORUM, AND EVERETT, CREECH, HANCOCK & HERZIG, A PARTNERSHIP, DEFENDANTS

No. 9014SC259

(Filed 18 December 1990)

1. **Assignments § 2 (NCI4th)— action for fraud and unfair and deceptive trade practices—assignability**

   An action for fraud and unfair and deceptive trade practices, arising from a breach of contract, was assignable.

   **Am Jur 2d, Assignments § 40.**

2. **Evidence § 24 (NCI3d)— defendant present at deposition—no right of defendant to challenge admissibility**

   Defendant could not challenge the admissibility of a deposition where defendant was present at the deposition and had an opportunity to develop testimony by cross-examination.

   **Am Jur 2d, Depositions and Discovery § 192.**

3. **Evidence § 31.2 (NCI3d)— original trust agreement lost— reasonable efforts to find document—copy admissible**

   The trial court did not err in admitting into evidence a copy of plaintiff's trust agreement where the original had not been located when the matter came on for trial despite plaintiff's attempts to obtain it, and the trial judge appeared to be of the opinion that plaintiff had made every reasonable effort to obtain the original from another defendant. N.C.G.S. § 8C-1, Rules 1003, 1004.

   **Am Jur 2d, Evidence §§ 453, 462.**

4. **Attorneys at Law § 60 (NCI4th)— unfair and deceptive trade practice—award of attorney's fees proper**

   The trial court did not abuse its discretion in awarding plaintiff reasonable attorney's fees where the court found that defendant's conduct, as found by the jury, constituted an unfair and deceptive trade practice.

   **Am Jur 2d, Costs § 72.**

**5. Partnership § 5 (NCI3d)— torts by law partner—apparent authority of partner**

In an action against a law partnership where plaintiff alleged fraud, breach of warranties, and unfair and deceptive trade practices based on the actions of a lawyer in certifying title to property in which he had an interest, the trial court properly directed verdict against defendant partnership on the issue of apparent authority where the evidence tended to show that certifying title to property was within the partnership's general practice of law; lawyers in the partnership had previously certified title to properties in which they had an interest; and the partnership was unable to establish that the lawyer in question lacked authority to certify titles on behalf of the partnership and that plaintiff had notice of such restriction.

**Am Jur 2d, Attorneys at Law § 216.**

**Vicarious liability of attorney for tort of partner in law firm. 70 ALR3d 1298.**

APPEAL by defendants Southeastern Shelter Corporation and Everett, Creech, Hancock & Herzig from judgments and orders entered 6 September 1989 and 2 October 1989 by *Judge Orlando F. Hudson* in DURHAM County Superior Court. Heard in the Court of Appeals 25 September 1990.

Plaintiff brought this civil action alleging fraud, breach of warranties and unfair and deceptive trade practices. From the denial of its motion for a new trial, Southeastern Shelter Corporation appeals. From the denial of its motion for judgment notwithstanding the verdict or, in the alternative, a new trial, Everett, Creech, Hancock & Herzig appeals.

*Maxwell & Hutson, P.A., by James H. Hughes and Stephanie C. Powell, for plaintiff-appellee.*

*McCall & James, by Randolph M. James and M. Lee Decker, for defendant-appellant Southeastern Shelter Corporation.*

*Womble Carlyle Sandridge & Rice, by G. Eugene Boyce, Elizabeth L. Riley and J. Keith Tart, for defendant-appellant Everett, Creech, Hancock & Herzig.*

INVESTORS TITLE INS. CO. v. HERZIG

[101 N.C. App. 127 (1990)]

JOHNSON, Judge.

In September of 1985, the Redevelopment Commission of the City of Henderson ("Commission") recorded a Declaration of Restrictions which imposed certain restrictions and covenants on a tract of land located in Vance County. The tract consisted of four parcels, which were purchased by the City of Henderson for redevelopment. Southeastern Shelter Corporation ("Southeastern") was selected to be the redeveloper of this land. Henderson Heights, Ltd. ("Henderson Heights") entered into an agreement with Southeastern and Jerry Chesson whereby Southeastern assigned to Henderson Heights all of the rights under the contract with the Commission. Pursuant to the terms of the assignment agreement between Henderson Heights and Southeastern, Henderson Heights was to pay Southeastern and Chesson jointly $100,000 for the assignment of the contract with the Commission. On 11 November 1980, the Commission deeded the property to Henderson Heights.

Henderson Heights subsequently failed to pay Southeastern the payments pursuant to the assignment agreement, thereby causing Southeastern and Chesson to refuse to close on the land. To complete the closing, Henderson Heights conveyed two parcels of the land, described as Tracts 1 and 4 on 18 November 1980 to Southeastern as security for the $45,000 due and owing under the assignment agreement. Simultaneously, Henderson Heights and Southeastern entered into a contract for sale whereby upon payment of the $45,000 the two parcels would be conveyed back to Henderson Heights. Henderson Heights, nevertheless, failed to pay the $45,000 owed to Southeastern.

Defendant David Herzig thereafter told Southeastern and Chesson that he could obtain a $30,000 loan by holding the two parcels in the law partnership's trust account and using the purchase agreement between Southeastern and Henderson Heights as security. Southeastern subsequently signed a deed and simultaneously assigned the contract for sale from Henderson Heights to secure the loan from the partnership. By deed dated 2 February 1981, the two parcels were conveyed from Southeastern to Herzig.

On 27 March 1981, Herzig obtained a $30,000 loan from Planters National Bank ("Planters Bank"), evidenced by a promissory note being secured by a Deed of Trust encumbering Tracts 1 and 4. Planters Bank, in turn, was presented with a preliminary certificate of title signed by Attorney Lee Corum which noted three excep-

tions. Corum, over the objection of Herzig, went to Vance County and discovered the deed from Southeastern to Herzig was not recorded and listed an additional exception on the subject property. The attorney's final certificate of title was signed by Herzig below the typed name of his former partnership, Everett, Creech, Hancock & Herzig ("the Partnership"). Herzig reported that he had examined the condition of the title vested in him and that there were no violations of the restrictive covenants and deed restrictions.

Based upon the final certificate of title, a title insurance policy on the subject property was issued in favor of Planters Bank by Investors Title Insurance Company ("Investors Title"). For payment of $30,000 plus interest, Planters Bank assigned all rights arising out of the claim to Investors Title. A loan was thereafter made by Planters Bank, with Chesson receiving $20,000 of the proceeds and Herzig receiving the remaining $10,000.

Herzig subsequently defaulted on the $30,000 note and Planters Bank then instituted a foreclosure proceeding. Foreclosure, however, was denied as a result of a set of restrictive covenants placed on the property in 1975.

On appeal, Southeastern brings forth eight questions for this Court's review and the Partnership brings forth another five. While we have considered all issues raised by both appeals, our discussion is limited to those issues we believe to be dispositive.

SOUTHEASTERN'S APPEAL

[1] First, Southeastern contends that the claims of conspiracy to commit fraud and conspiracy to commit unfair and deceptive trade practices are nonassignable as a matter of law. We disagree.

While we recognize that the law regarding the assignability of claims of conspiracy to commit unfair trade practices is barren, we also recognize that the "assignability of things in action is the rule, and nonassignability the exception." 6 Am. Jur. 2d, Assignments, § 40 (1963). Further,

> [i]n a jurisdiction following the rule that a right of action for fraud and deceit is nonassignable, it has been held that such rule does not preclude an insurance company . . . from setting up as a defense . . . the fraud and deceit of the insured in procuring the issuance of the policy from such other company.

*Id.* Thus, an action sounding in fraud and deceit is assignable. 40 ALR 4th 684, *Assignability of Claim for Legal Malpractice.* This is an action sounding in both fraud and unfair and deceptive trade practices.

Investors Title's position is predicated upon the holding in *Allstate Ins. Co. v. Kelly,* 680 S.W.2d 595 (1984), wherein the Texas Court of Appeals determined that an insured was entitled to assign a portion of her claim against her insurer and that the assignment properly assigned her cause of action under the Texas Deceptive Trade Act and the Insurance Code. The insured's assignment of her rights to a third party was a direct result of the insurance company's failure to timely settle a claim in accordance with her insurance policy. Southeastern's position, however, is premised primarily upon *Southern Railway Co. v. O'Boyle Tank Lines, Inc.,* 70 N.C. App. 1, 318 S.E.2d 872 (1984), and similar cases wherein it was held that an assignment of a personal injury claim or an intentional tort claim was ineffective under common law and was contrary to public policy.

Unquestionably, the case *sub judice* is one of first impression. In our research, we have found no North Carolina law addressing this issue and therefore look to other jurisdictions for guidance. Upon review of both arguments, we must agree with Investors Title's position. In making such a holding, it should be noted that the instant case is clearly an action arising out of a breach of contract not an action arising out of an intentional tort, as Southeastern would have us believe.

Pursuant to an agreement between Investors Title and Planters Bank, Planters Bank received $30,000 plus interest and Investors Title received all of Planters Bank's rights arising out of any claim against Herzig. Investors Title was therefore entitled to all of the rights that Planters Bank had against Herzig when Herzig defaulted on the $30,000 note, including an action for unfair and deceptive trade practices. *See Allstate Ins. Co. v. Kelly, supra.* Having found nothing contrary to public policy in holding that this action for fraud and unfair and deceptive trade practices, arising from a breach of contract, is assignable, we overrule this assignment.

[2] Second, Southeastern challenges the admissibility of the deposition of David Herzig taken at a foreclosure proceeding. In light of the fact that Southeastern was present at the deposition of

Herzig and had an opportunity to develop testimony by cross-examination, this assignment is without merit.

[3] Third, Southeastern contends that the trial court erred in admitting into evidence plaintiff's trust agreement. Specifically, Southeastern argues that Investors Title's introduction of the duplicated trust agreement raised genuine issues of authenticity.

G.S. § 8C-1, Rule 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Pursuant to G.S. § 8C-1, Rule 1004, a duplicate is admissible if the original is, *inter alia*, lost or destroyed, not obtainable or in the possession of the opponent.

When this matter came on for trial, the original trust agreement had not been located despite Investors Title's attempt to issue a *subpoena duces tecum* to defendant Herzig. In determining that the duplicate trust agreement was admissible pursuant to the N.C. Rules of Evidence, the trial judge appears to have been of the opinion that Investors Title made every reasonable effort to obtain the original trust agreement from defendant Herzig, but was unsuccessful. We agree. This assignment is overruled.

[4] Last, Southeastern contends that the trial court abused its discretion in awarding attorney's fees. We disagree.

Reasonable attorney's fees may be awarded for a G.S. § 75-1.1 violation upon a specific finding by the trial judge that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such action." G.S. § 75-16.1.

Here, the trial judge found that Southeastern's conduct, as found by the jury, constituted an unfair and deceptive trade practice and "[t]hat the act of committing fraud upon Planters National Bank constitute[d] a willful and intentional act entitling the Plaintiff to reasonable attorney's fees pursuant to G.S. § 75-16.1." These findings of fact are supported by competent evidence. Therefore, the trial judge's determination that Investors Title was entitled to an award of reasonable attorney's fees is supported by the findings of fact.

INVESTORS TITLE INS. CO. v. HERZIG

[101 N.C. App. 127 (1990)]

EVERETT, CREECH, HANCOCK & HERZIG'S APPEAL

[5]   First, the Partnership contends that the trial court erred in granting Investors Title's motion for directed verdict on the issue of apparent authority.

In ruling on a motion for directed verdict, the trial court "must consider the evidence in the light most favorable to the nonmovant and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the nonmovant." *Heath v. Craighill, Rendleman, Ingle & Blythe*, 97 N.C. App. 236, 240, 388 S.E.2d 178, 181 (1990), *quoting Williams v. Jones*, 322 N.C. 42, 48, 366 S.E.2d 433, 437 (1988). Where there are any conflicts, inconsistencies or contradictions, the nonmovant is to be given the benefit of every inference to be reasonably drawn in his favor. *Daughtry v. Turnage*, 295 N.C. 543, 246 S.E.2d 788 (1978).

A partnership is liable for loss or injury caused "by any wrongful act or omission of any partner *acting in the ordinary course of business of the partnership or with the authority of his copartners* . . . to the same extent as the partner so acting or omitting to act." G.S. § 59-43 (emphasis added). *See also Heath v. Craighill, Rendleman, Ingle & Blythe, supra* at 241, 388 S.E.2d at 181. Where a principal has held the agent out as possessing certain authority, or where he has permitted the agent to represent that he possesses certain authority such agent will be said to have apparent authority. *Zimmerman v. Hogg & Allen*, 22 N.C. App. 544, 207 S.E.2d 267, *rev'd on other grounds*, 286 N.C. 24, 209 S.E.2d 795 (1974). The principal's liability will then be determined by the authority the third person, in the exercise of reasonable care, justifiably believed that the agent had, under the circumstances. *Id.*

The Partnership cites several cases, namely, *Zimmerman v. Hogg & Allen, supra*, to support its contention that "a lawyer who in the name of the law partnership and without the knowledge, consent or authority of his co-partners fraudulently certifies title to property for the purpose of personal gain does not act in the ordinary course of the business of the partnership." Such reliance, however, is misapplied. *Zimmerman v. Hogg & Allen, supra*, and similar cases do not stand for the basic proposition that upon review of liability, the threshold issue is whether the *wrongful performance of the act* falls within the scope of the partnership's practice of law. Instead, these cases provide that the ultimate issue is whether

the *general act* committed by an attorney in the partnership was within the scope of the partnership's practice of law.

In light of the uncontroverted facts before this Court which reveal that certifying title to property is within the Partnership's general practice of law; other evidence which further reveals that lawyers in the Partnership have previously certified title to property in which that lawyer had an interest; and the Partnership's inability to establish that: (1) defendant Herzig lacked authority to certify titles on behalf of the Partnership and (2) Investors Title had notice of such restriction, the trial court properly directed verdict against the Partnership on the issue of apparent authority. This assignment is overruled.

Finally, the Partnership contends that the trial court erred in granting Investors Title's motion for directed verdict on the defense of estoppel and in failing to consider the issues of proximate cause and constructive knowledge. We disagree.

To establish a claim of equitable estoppel, the following elements must be met:

(1) The conduct to be estopped must amount to false representation or concealment of material fact or at least which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the party afterwards attempted to assert;

(2) Intention or expectation on the party being estopped that such conduct shall be acted upon by the other party or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon;

(3) Knowledge, actual or constructive, of the real facts by the party being estopped;

(4) Lack of knowledge of the truth as to the facts in question by the party claiming estoppel;

(5) Reliance on the part of the party claiming estoppel upon the conduct of the party being sought to be estopped;

(6) Action based thereon of such a character as to change his position prejudicially.

*Transit, Inc. v. Casualty Co.*, 285 N.C. 541, 206 S.E.2d 155 (1974). In this case, the defense of equitable estoppel is unavailable to the Partnership since it failed to put forth evidence to support this defense. Similarly, the Partnership has failed to meet its burden of showing that the trial court improperly issued a directed verdict on the issues of proximate cause and constructive notice.

Accordingly, the judgment of the trial court is

Affirmed.

Judges EAGLES and PARKER concur.